## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-23282-CIV-LENARD

**CHICKEN KITCHEN USA, LLC,**
**as assignee of Three Chefs and a**
**Chicken, Inc.,**

      Plaintiff,

**v.**

**MAIDEN SPECIALTY INSURANCE**
**COMPANY,**

      Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MAIDEN SPECIALTY INSURANCE COMPANY'S AMENDED MOTION TO DISMISS COUNTS I AND III OF CHICKEN KITCHEN'S COMPLAINT (D.E. 46)

**THIS CAUSE** is before the Court on Defendant Maiden Specialty Insurance Company's ("Maiden") Amended Motion to Dismiss Counts I and III of Chicken Kitchen's Complaint, filed July 20, 2015. ("Motion," D.E. 46.) Plaintiff Chicken Kitchen USA, LLC filed a Response on October 5, 2015, ("Response," D.E. 67), to which Defendant filed a Reply on October 13, 2015, ("Reply," D.E. 76). Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I.    Background[1]

This is an action for insurance bad faith arising under Section 624.155, Florida Statutes (2012). (Compl., D.E. 1 ¶ 1.) Chicken Kitchen is the owner of a restaurant

---

[1]    Unless otherwise noted, the facts contained in this section are gleaned from Plaintiff's Complaint and are deemed to be true for purposes of ruling on Defendant's Motion.

chain known as "Chicken Kitchen."  (Id. ¶ 7.)  It owns a federal trademark registration for the word mark "CHICKEN KITCHEN."  (Id.)  The Trademark, related dress, and proprietary recipes have been in exclusive and continuous use by Chicken Kitchen in connection with the operation of its restaurants since at least November 1983.  (Id.)

On August 27, 1999, Chicken Kitchen entered into a Franchise Agreement with The McDonnough's Investment Group, Inc ("McDonnough Investment Group"), whose principals are Rudyard A. McDonnough, Rudyard McDonnough, Jr., and Richard McDonnough ("the McDonnoughs").  (Id. ¶ 10.)  On March 2, 2002, pursuant to the Franchise Agreement, McDonnough Investment Group opened a Chicken Kitchen franchise at 11423 Southwest 40th Street, Miami, Florida.  (Id. ¶ 12.)  Chicken Kitchen and McDonnough Investment Group operated under the Franchise Agreement until its termination in November 2007.  (Id. ¶ 13.)

In June 2011, the McDonnoughs, through an entity named Three Chefs, opened a competing restaurant named "3 Chefs and a Chicken" at 8195 Southwest 40th Street, Miami, Florida.  (Id. ¶ 14.)  The 3 Chefs and a Chicken restaurant was essentially a replica of a Chicken Kitchen restaurant, which the McDonnoughs were operating under a different name without Chicken Kitchen's permission to avoid compensating Chicken Kitchen under the Franchise Agreement.  (Id. ¶ 15.)  In fact, the McDonnoughs hired at least six Chicken Kitchen employees to run the new restaurant.  (Id. ¶ 16.)  Chicken Kitchen believes that the McDonnoughs were also using Chicken Kitchen's protected trade dress.  (Id.)

On February 9, 2012, Chicken Kitchen brought an eight-count complaint against Three Chefs and the McDonnoughs for breach of contract, misappropriation of trade secrets, injury to business reputation, trade dress infringement, unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices Act, (the "first lawsuit"). (Id. ¶ 17.)  On February 23, 2012, Three Chefs and the McDonnoughs notified Maiden of the first lawsuit and demanded that Maiden provide them a defense under a policy of general liability insurance coverage issued by Maiden.  (Id. ¶ 18.)  Three Chefs is the named insured under the Policy.  (Id. ¶ 19.)  Under the terms of the Policy, Maiden was obligated to defend Three Chefs against any suit seeking damages for "personal and advertising injury," (id. ¶ 21), and agreed to pay those sums that Three Chefs became legally obligated to pay as "personal and advertising injury" damages, (id. ¶ 20).

Three Chefs and the McDonnoughs requested that Maiden retain Richard S. Ross, their intellectual property attorney, to defend Three Chefs and the McDonnoughs.  (Id. ¶ 23.)  Mr. Ross made an appearance in the first lawsuit on behalf of Three Chefs and the McDonnoughs and removed the first lawsuit from state court to federal court.  (Id. ¶ 25 (citing Chicken Kitchen USA, LLC v. Three Chefs and a Chicken, Inc., 12-cv-20891-PCH (S.D. Fla. Mar. 5, 2012)).)  By letter dated March 19, 2012, Maiden denied a defense to the McDonnoughs on the ground that they were not named insureds under the Policy, but agreed to defend Three Chefs under a reservation of rights concerning coverage and indemnification.  (Id. ¶ 26.)  Maiden would not cooperate with Three Chefs and the McDonnoughs in their choice of counsel, and instead retained Sedgwick LLP to represent Three Chefs in the first lawsuit.  (Id. ¶ 27.)  Because Maiden refused to pay for

Mr. Ross's services, Three Chefs and the McDonnoughs rejected the terms of that defense.  (Id. ¶ 28.)

On July 25, 2012, Maiden filed a complaint for declaratory relief to determine whether the Policy provided liability coverage to Three Chefs and the McDonnoughs (the "second lawsuit").   (Id. ¶ 29 (citing Maiden Specialty Ins. Co. v. Three Chefs and a Chicken, et al., Case No. 12-cv-22724-JAL (S.D. Fla. July 25, 2012)).)   In its amended complaint, Maiden alleged no coverage on the ground that the first lawsuit did not concern "personal or advertising injuries" under the Policy.  (Id. ¶ 30.)

Pursuant to an Assignment, Settlement Agreement, and Covenant Not to Execute or Record (the "Settlement Agreement") dated October 17, 2012, the parties to the first lawsuit consented to the entry of final judgment for trade dress infringement "relating to [Three Chefs'] unprivileged imitation of the overall design and appearance, style of operation, websites and means of [Chicken Kitchen] carried out in the course of [Three Chefs'] advertising to attract and maintain the general public as customers for its goods and services," and to the dismissal of all other pending counts.  (Id. ¶ 32.)  Counsel for Three Chefs informed Maiden's counsel of the settlement on November 7, 2012.  (Id. ¶ 34.)  On November 20, 2012, Judge Huck entered an order accepting the consent final judgment.  (Id. ¶ 36.)

On December 20, 2012, Three Chefs and the McDonnoughs moved for summary judgment in the second lawsuit contending that trade dress infringement is an "advertising injury."  (Id. ¶ 37.)  On December 28, 2012, Maiden moved for final summary judgment arguing, inter alia, that the settlement in the first lawsuit was not

authorized under the Policy and "constitute[d] a breach of the policy and void[ed] coverage." (Id. ¶ 38.)   On January 10, 2013, Maiden filed a motion to file a second amended complaint, arguing that events forming the basis of a new coverage defense arose in October and November 2012 when the settlement agreement was entered into without its knowledge.  (Id. ¶ 39.)  It later sought to withdraw and amend its summary judgment motion based on that ostensibly new coverage defense.  (Id. ¶ 40.)  On June 4, 2013, this Court denied Maiden's untimely motion to amend for failure to show good cause why it had not moved for leave to amend its amended complaint within the December 7, 2012 deadline set by the scheduling order.  (Id. ¶ 41.)

The Court further found that the Policy provides coverage for trade dress infringement, stating:

> because the Agreement and Order in the [first lawsuit] provides for judgment and damages for trade dress infringement occurring in advertising, the unambiguous language of the Policy provides coverage for such damages, and Plaintiff concedes coverage for such damages under the Policy, the Court finds insurance coverage exists for trade dress infringement occurring in advertising and Defendants are entitled to summary judgment on Count I of the Amended Complaint.

(Id. ¶ 43.)  On June 14, 2013, the parties filed a joint status report in which Chicken Kitchen "expressed its intent to enforce and/or collect upon the consent judgment of $1.2 million for which Maiden is responsible as a result of the court's findings vis-à-vis the applicability of the Policy to the claims settled in the first lawsuit."  (Id. ¶ 44.)

On July 26, 2013, Chicken Kitchen moved for the entry of judgment pursuant to Federal Rule of Civil Procedure 54(c).  (Id. ¶ 45.)  On March 13, 2014, this Court entered a declaratory judgment in favor of Three Chefs, the McDonnoughs, and Chicken Kitchen

against Maiden, finding that the allegations made by Chicken Kitchen against Three Chefs in the first lawsuit were "personal and advertising injuries" as defined by the Policy, and were therefore covered by the Policy.  (Id. ¶ 46.)  The Court further ordered that "[i]f Chicken Kitchen seeks a monetary judgment from [Maiden], it must bring a separate action or file a motion for monetary judgment in the [first lawsuit], . . . if appropriate."  (Id.)

On July 2, 2014, Chicken Kitchen filed a Civil Remedy Notice of Insurer Violations ("CRN") with the State of Florida Department of Financial Services, pursuant to Florida Statutes § 624.155(3)(a), and served the CRN upon Maiden the same day.  (Id. ¶ 47.)

On September 5, 2014, Chicken Kitchen filed its Complaint in this action for (1) statutory bad faith, (D.E. ¶¶ 50-52), (2) common law bad faith, (id. ¶¶ 53-59), and punitive damages, (id. ¶¶ 60-63).  On October 2, 2014, Maiden moved to dismiss the Complaint.  (See D.E. 7, 8.)  On February 2, 2015, Maiden moved to stay the proceedings pending resolution of the appeal of the Court's Judgment in the second lawsuit, (D.E. 27) which the Court granted on March 11, 2015, and administratively closed the case, (D.E. 39).  On June 26, 2015, the Eleventh Circuit Court of Appeals issued its Mandate affirming the Court's Judgment in the second lawsuit.  See Maiden Specialty Ins. Co. v. Three Chefs and a Chicken, et al., 604 F. App'x 920 (11th Cir. 2015).  On July 15, 2015, the Court entered an Order lifting the stay and reopening the case.  (D.E. 41.)  On July 20, 2015, Maiden filed the instant Amended Motion to Dismiss Counts I and III of Chicken Kitchen's Complaint.  (D.E. 46.)

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint (or a portion thereof) for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff.  See Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss.  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard).  Furthermore, courts may make reasonable inferences in a plaintiff's favor, but they are not required to draw plaintiff's inference.  Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

7

## III.     Discussion

Maiden moves to dismiss counts I (statutory bad faith) and III (punitive damages). The

Court will discuss each in turn.

### a.      Count I: statutory bad faith

As a condition precedent to bringing a bad faith action, an insured must file a CRN

of the violation with the Department of Financial Services and the insurer, providing the

insurer 60 days to cure the violation.  Fla. Stat. § 624.155(3)(a) & (d).  Specifically,

> The notice shall be on a form provided by the department and shall state
> with specificity the following information, and such other information as
> the department may require:
>
> 1. The statutory provision, including the specific language of the statute,
> which the authorized insurer allegedly violated.
> 2. The facts and circumstances giving rise to the violation.
> 3. The name of any individual involved in the violation.
> 4. Reference to specific policy language that is relevant to the violation,
> if any.  If the person bringing the civil action is a third party claimant,
> she or he shall not be required to reference the specific policy language if
> the authorized insurer has not provided a copy of the policy to the third
> party claimant pursuant to written request.
> 5. A statement that the notice is given in order to perfect the right to
> pursue the civil remedy authorized by this section.

Fla. Stat. § 624.155(3)(b).  "Within 20 days of receipt of the notice, the department may

return any notice that does not provide the specific information required by this

section[.]"  Id. § 624.155(c).  The Department's "acceptance of a CRN serves as evidence

that the CRN has sufficient specificity to provide the insurer with notice of the

violation[.]"  Canales v. Am. Sec. Ins. Co., No. 8:11–cv–789–T–33AEP, 2011 WL

5358753, at *4 (M.D. Fla. Nov. 7, 2011) (citing Tropical Paradise Resorts, LLC v.

Clarendon Am. Ins. Co., No. 08-60254-CIV, 2008 WL 3889577, at *4 (S.D. Fla. Aug.

8

20, 2008); <u>Porcelli v. OneBeacon Ins. Co., Inc.</u>, 635 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008)).

Maiden argues that Chicken Kitchen's CRN failed to state the manner in which Maiden could cure any alleged violations, and, as such, Chicken Kitchen failed to satisfy the condition precedent to bringing a claim for statutory bad faith.  (Mot. at 3.)  Chicken Kitchen argues that although it did not state a specific monetary amount owed to cure the violation, Section 624.155 does not require the CRN to include a specific monetary amount.  (Resp. at 8.)  It further argues that as part of the joint status report the Parties filed on June 14, 2013, Chicken Kitchen expressed its intent to enforce and/or collect upon the consent judgment of $1.2 million for which Maiden was responsible under the policy.  (<u>Id.</u> at 9.)  "The tender of the policy limit of $1M would have 'cured' the violation and satisfied the requirement of § 624.155(2)."  (<u>Id.</u> (citing <u>Clauss v. Fortune Ins. Co.</u>, 523 So. 2d 1177, 1179 (Fla. Dist. Ct. App. 1988)).)

The Court finds that the CRN was sufficiently specific to satisfy the mandates of Section 624.155.  First, it indicates all of the statutory provisions that Chicken Kitchen alleges Maiden violated.  (<u>See</u> CRN, D.E. 1 at 111.)[2]  Second, it gives a detailed recitation of the facts giving rise to the violation:

> A lawsuit was filed in state court on February 9, 2012 and removed to the U.S. District Court for the Southern District of Florida on March 5, 2012, entitled Chicken Kitchen USA, LLC v. Three Chefs and a Chicken, Inc., et al., No. 12-cv-20891-PCH.  Chicken Kitchen brought suit against Three Chefs and a Chicken, Inc., Rudyard A. McDonnough, Rudyard McDonnough, Jr., and Richard McDonnough, and the McDonnoughs'

---

[2]  Specifically, it cited Florida Statutes §§ 624.155(1)(b)(1) and 626.9541(1)(i)(3)(a), (b), and (d).

Investment Group, Inc., concerning the operation of a restaurant. Chicken Kitchen brought claims against Three Chefs and the McDonnoughs for breach of contract, misappropriation of trade secrets, injury to business reputation, trade dress infringement, unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-213.

Three Chefs and the McDonnoughs demanded that Maiden provide them a defense. Maiden denied a defense to certain of the McDonnoughs and to the McDonnoughs' Investment Group, Inc. on the ground that they were not named insureds under the policy. Maiden agreed to defend Three Chefs under a reservation of rights concerning coverage and indemnification, the equivalent of a coverage denial under Florida Law. The insureds lawfully rejected the terms of that defense.

On July 25, 2012, Maiden filed a complaint for declaratory relief in the U.S. District Court for the Southern District of Florida, entitled Maiden Specialty Insurance Company v. Three Chefs and a Chicken, Inc., et al., Case No. 12-cv-22724-JAL, seeking a declaratory judgment to determine whether its insurance policy provided liability coverage to Three Chefs and the McDonnoughs.

The Parties to the Underlying lawsuit thereafter settled that first lawsuit on October 25, 2012, consenting to the entry of final judgment for trade dress infringement "relating to [Three Chefs'] unprivileged imitation of the overall design and appearance, style of operation, websites and means of [Chicken Kitchen] carried out in the Court of [Three Chefs'] advertising to attract and maintain the general public as customers for its goods and services," and to the dismissal of all other pending counts. Chicken Kitchen was assigned the rights of the insureds against Maiden.

On November 20, 2012, U.S. District Judge Paul C. Huck entered an order accepting the consent final judgment.

(Id. at 112.) Fourth, Chicken Kitchen references the specific policy language that is

relevant to the violation:

Section I – Coverages

Coverage B Personal and Advertising Injury Liability

1. Insuring Agreement

A. We will pay those sums that the insured becomes obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .

"Personal and advertising injury" is defined as:

14. "Personal and advertising injury" means injury, including consequential, "bodily injury", arising out of one or more of the following offenses:

G. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Advertisement is defined as:

1. "Advertisement means a notice that is broadcast or published to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

A. Notices that are published include material placed on the internet or similar electronic means of communication.

(D.E. 1 at 111.)   Finally, Chicken Kitchen checked the box next to the following statement: "The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155 Florida Statutes."  (Id. at 110.)

Thus, the information required by Section 624.155(3)(b)(1), (2), (4), and (5) is stated with specificity in the CRN.  (See D.E. 1 at 110-112.)   The only information not contained in the CRN is "[t]he name of any individual involved in the violation."  Fla. Stat. § 624.155(3)(b)(3).   However, Maiden does not allege that this omission is fatal to Chicken Kitchen's claim or argue that it is a basis for dismissal.   And as a matter of

11

statutory construction, the provision's use of the term "<u>any</u> individual" rather than "<u>the</u> individual(s)" is recognition that there might not be an individual involved in the violation, or that the insured might not know which individual at the insurance company was involved in the violation.

To the extent that Maiden argues that the CRN is deficient for failure to provide a specific dollar amount, "Florida's statute does not require an insured on the CRN to allege a specific amount owed to cure the violation by the insurer." <u>King v. Gov't Emp. Ins. Co.</u>, No. 8:10–cv–977–T–30AEP, 2012 WL 4052271, at *7 (M.D. Fla. Sept. 13, 2012) (citing <u>Bullard Bldg. Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.</u>, No. 8:08–cv–50–T–30MAP, 2009 WL 2423436, at *10 (M.D. Fla. Aug. 4, 2009); <u>Tropical Paradise</u>, 2008 WL 3889577, at *3.  "Rather, the CRN is designed to prevent insurers from playing a 'guessing game' as to what, and how, to cure within the sixty-day window."  <u>Id.</u> (quoting <u>Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 580 F. Supp. 2d 1294, 1300 (S.D. Fla. 2008)).  In this regard, the Court notes that the Department of Financial Services accepted Chicken Kitchen's CRN, and that the Department's "acceptance of a CRN serves as evidence that the CRN has sufficient specificity to provide the insurer with notice of the violation[.]"  <u>Canales</u>, 2011 WL 5358753, at *4 (citing <u>Tropical Paradise</u>, 2008 WL 3889577, at *4; <u>Porcelli</u>, 635 F. Supp. 2d at 1318).

The Court finds that Maiden was not required to guess as to what and how to cure the violation specified in the CRN.  The CRN makes clear that Chicken Kitchen, on assignment of rights from Three Chefs, is seeking the liability coverage Maiden owes

Three Chefs for the underlying Consent Judgment.  (D.E. 1 at 112.)  Judge Huck's Order
Accepting the Consent Final Judgment states that Chicken Kitchen and Three Chefs
consented to a $1.2 million judgment in Chicken Kitchen's favor.  Chicken Kitchen USA,
LLC v. Three Chefs and a Chicken, Inc., 12-cv-20891-PCH (S.D. Fla. Nov. 20, 2012)).
No guess work is needed.  Maiden's motion to dismiss Count I is denied.

**b.     Count III: punitive damages**

Next, Maiden argues that Count III contains "nothing more than a formulaic
recitation of the elements of a cause of action for punitive damages pursuant to Florida
Statute § 624.155(5)" which is insufficient to survive a 12(b)(6) motion to dismiss.  (Mot.
at 4.)

To sustain a claim for punitive damages under Florida Statutes § 624.155(5), a
plaintiff must show "that the acts giving rise to the violation occur with such frequency as
to indicate a general business practice and these acts are: (a) [w]illful, wanton, and
malicious; (b) [i]n reckless disregard for the rights of any insured; or (c) [i]n reckless
disregard for the rights of a beneficiary under a life insurance contract."  Count III states,
in its entirety:

> 60.     Chicken Kitchen realleges and incorporates by reference each
> and every allegation contained in the preceding paragraphs as if fully set
> forth herein.[3]

---

3       As is clear from Paragraph 60, the Complaint is a shotgun pleading in that each
count incorporates by reference every preceding paragraph and does not specify which
allegations of fact are intended to support which claim(s) for relief.  See Anderson v. Dist. Bd.
Of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996).  "Consequently, in ruling on
the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite
onerous."  Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295
(11th Cir. 2002).  "[S]hotgun pleadings wreak havoc on the judicial system."  Byrne v. Nezhat,

61.     The acts complained of herein constituted Maiden's general business practices in that such acts: (a) were expressions of, and in compliance with, standard company practices and procedures; (b) are claimed by Maiden to be in conformity with what it contends are standard and good faith claims practices; and, consequently or incidentally; (c) occur with such frequency as to indicate general business practices.

62.     Maiden's actions with respect to Three Chefs and Chicken Kitchen have been in reckless disregard for the rights of its insured.

63.     As a direct, foreseeable, and proximate result of Maiden's bad faith, Chicken Kitchen has suffered and will continue to suffer damages.

The Court agrees with Maiden that Count III is the quintessential "formulaic recitation of the elements of a cause of action" that is insufficient to state a claim under Rule 8. Twombly, 550 U.S. at 555.

In its Response, Chicken Kitchen attempts to establish a general business practice by urging the Court to take judicial notice of other cases in which an insured has sued Maiden for breach of an insurance contract.  (Resp. at 10-14.)  Pursuant to Federal Rule of Evidence 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  "The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without

---

261 F.3d 1075, 1130 (11th Cir. 2001).  "Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006).  When a plaintiff files a shotgun complaint, a district court may sua sponte order repleading pursuant to Federal Rule of Civil Procedure 12(e).  Id.  However, the Court declines to do so here because Maiden's Motion did not require the Court to perform the onerous task of sifting out irrelevancies in the Complaint's factual recitation.

requiring evidence to establish it." United States v. Berrojo, 628 F.2d 368, 369 (5th Cir. 1980).[4]  "It is recognized that a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

It is doubtful whether a court may judicially notice the "fact" that an insurance company has a general business practice of acting in bad faith.  See Berrojo, 628 F.2d at 369 (stating that a court may judicially notice "a generally accepted or readily verified fact").   However, even if it could be judicially noticed, Chicken Kitchen has not established this "fact" because allegations in unsworn complaints filed in other cases cannot be used as evidence of an insurer's general business practices for purposes of establishing a punitive damages claim.  See Shannon R. Ginn Constr. Co. v. Reliance Ins. Co., 51 F. Supp. 2d 1347, 1354 (S.D. Fla. 1999) (finding that the plaintiff could not rely on unsworn complaints from cases in other jurisdictions to establish that an insurance company "conducts its claims practice unfairly"); see also Tucker v. Am. Intern. Grp., Inc., 936 F. Supp. 2d 1, 22 (D. Conn. 2013) (noting, in a similar case and in response to a similar argument, that "an action that has not been decided on its merits does not result in any finding of wrongdoing on the part of the parties and is thus not admissible evidence of the facts alleged therein").  Chicken Kitchen has failed to sufficiently plead a claim for punitive damages, and Count III must be dismissed without prejudice.

---

[4]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

IV.    **Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

**1.**    Maiden Specialty Insurance Company's Amended Motion to Dismiss Counts I and III of Chicken Kitchen's Complaint is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

**2.**    Count III of the Complaint is **DISMISSED WITHOUT PREJUDICE**; and

**3.**    Chicken Kitchen shall have fourteen days from the date of this Order to file an amended complaint to cure the deficiencies identified above, if it wishes to do so.

**DONE AND ORDERED** in Chambers at Miami, Florida this 19th day of November, 2015.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**