UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CHICKEN KITCHEN USA, LLC, as assignee of
THREE CHEFS AND A CHICKEN, INC.

    Plaintiff,

v.                                                              Case No.: 1:14-cv-23282-JLK

MAIDEN SPECIALTY INSURANCE COMPANY,

    Defendant.
_____/

**MAIDEN SPECIALTY INSRUANCE COMPANY'S STATEMENT OF
MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

    1.    On June 28, 2011, MAIDEN SPECIALTY INSURANCE COMPANY ("MAIDEN") issued a policy of commercial general liability insurance to Three Chefs and a Chicken, Inc. ("Three Chefs"), policy number NBAA00595-1100 ("the Policy"). [*See* Policy, attached as Exhibit "A", MAIDEN0192-0257].

    2.    On February 7, 2012, CHICKEN KITCHEN USA, LLC ("CHICKEN KITCHEN") brought an action against Three Chefs, Rudyard McDonnough, Jr., Rudyard A. McDonnough, Richard McDonnough, and the McDonnough's Investment Group, Inc. in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida ("the underlying action"). [*See* Complaint, attached as Exhibit "B", MAIDEN0122-0179]. CHICKEN KITCHEN's Complaint consisted of a total of eight (8) counts: (1) Breach of Contract; (2) Injunctive Relief: (3) Misappropriation of Trade Secret; (4) Injury to Business Reputation and Dilution; and (5) Trade Dress Infringement; (6) Unfair Competition under the Lanham Act; (7) Unfair Competition under Florida common law; and (8) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). [*Id.*].

3. In its Complaint, CHICKEN KITCHEN specifically alleged that on or around August 27, 1999, CHICKEN KITCHEN entered into a Franchisee Agreement with The McDonnough's Investment Group, whose principals are Rudyard A. McDonnough, Rudyard McDonnough, Jr., and Richard McDonnough (collectively "the McDonnoughs"). [*See* Exhibit "B", at MAIDEN0125; MAIDEN0150-0176]. Pursuant to this Franchise Agreement, CHICKEN KITCHEN alleged that The McDonnough's Investment Group opened a Chicken Kitchen franchise in Miami, Florida. [*See* Exhibit "B", at MAIDEN0125].

4. In its Complaint, CHICKEN KITCHEN further alleged that by opening the "3 Chefs and a Chicken" restaurant, Three Chefs and the McDonnoughs had used CHICKEN KITCHEN's trade dress, recipes, operating procedures, image, and other confidential and proprietary information that allegedly caused a decline in CHICKEN KITCHEN's profits and allegedly harmed CHICKEN KITCHEN's goodwill and business reputation. [*See* Exhibit "B", at MAIDEN0127; MAIDEN0130].

5. On February 22, 2012, Richard McDonnough sent correspondence to MAIDEN attaching the Complaint filed by CHICKEN KITCHEN. [*See* February 22, 2012 letter, attached as Exhibit "C", MAIDEN01453-01454]. Mr. McDonnough requested that MAIDEN provide coverage for the lawsuit as a loss arising under "advertising injury." [*Id.*]. Mr. McDonnough also advised that they had retained Richard Ross, Esq. to defend them in this matter. [*Id.*].

6. On February 23, 2012, MAIDEN received a notice of claim stating that Three Chefs and the McDonnoughs had been sued by CHICKEN KITCHEN. [*See* Notice of Claim, attached as Exhibit "D", MAIDEN0120-0121].

7. Around March 5, 2012, MAIDEN retained Moises Melendez, Esq, with the law firm of Sedgwick, LLP to defend Three Chefs, the McDonnoughs, and the McDonnough's

Investment Group in the action brought by CHICKEN KITCHEN. [*See* Notice of Appearance, attached as Exhibit "E", MAIDEN0180-0181]; [*See* March 19, 2012 correspondence, attached as Exhibit "F", MAIDEN0287-0288].

8.     On March 5, 2012, Richard Ross, Esq., the attorney hired by Three Chefs and the McDonnoughs, filed a Notice of Removal of the state court action filed by CHICKEN KITCHEN to the United States District Court, Southern District of Florida. [*See* Notice of Removal, attached as Exhibit "G", MAIDEN0182-0186].

9.     On March 15, 2012, Mr. Ross filed an Answer and Affirmative Defenses to CHICKEN KITCHEN's Complaint on behalf of Three Chefs, the McDonnoughs, and the McDonnough's Investment Group. [*See* Answer and Affirmative Defenses, attached as Exhibit "H", MAIDEN0268-0276]. Specifically, Mr. Ross asserted a total of six (6) affirmative defenses, which were as follows: (1) The complaint fails to state a claim upon which relief can be granted; (2) Waiver as it pertains to Counts I and II; (3) Release as it pertains to Counts I and II; (4) Plaintiff is estopped from asserting the pleaded allegations; (5) Plaintiff is prevented from asserting the pleaded allegations based on laches; (6) Plaintiff lacks standing to assert the claims alleged in the complaint. [*Id.* at MAIDEN0273].

10.    On March 19, 2012, Theresa Fitzgerald, a claims analyst with MAIDEN, sent correspondence to Mr. Ross advising that pursuant to MAIDEN's contractual right and duty to defend the insured against damages arising under the policy, MAIDEN had retained the services of Moises Melendez, Esq., from the law firm of Sedgwick, LLP to represent the interests of Three Chefs and the McDonnoughs in the pending lawsuit filed by CHICKEN KITCHEN. [*See* March 19, 2012 Correspondence, attached as Exhibit "F", MAIDEN0287-0288].

11.    On April 3, 2012, Mr. Melendez sent correspondence to Richard McDonnough

3

outlining his extensive experience in trade dress and trade secret lawsuits. [*See* April 3, 2012 letter, attached as Exhibit "I", MAIDEN0293-0295].

12.     On April 4, 2012, Mr. Ross filed a Motion to Withdraw as counsel for Three Chefs, the McDonnoughs, and the McDonnough's Investment Group in light of MAIDEN's retention of Mr. Melendez as defense counsel. [*See* Motion to Withdraw, attached as Exhibit "J", MAIDEN0299-0303].

13.     On April 4, 2012, Robert D. Moses, Esq. of Wiederhold, Moses, Kummerlen & Waronicki, P.A. sent correspondence to Three Chefs advising that he had been retained to represent the interests of MAIDEN in relation to the claim brought by CHICKEN KITCHEN against Three Chefs, the McDonnoughs, and the McDonnough's Investment Group. [*See* April 4, 2012 letter, attached as Exhibit "K"]. Mr. Moses also advised Three Chefs that MAIDEN was providing notice of its intent to proceed under a reservation of rights, and MAIDEN would continue its investigation into coverage for the matter. [*Id.* at 9]. Specifically, Mr. Moses noted that the policy issued to Three Chefs provided coverage for personal and advertising injury liability, as defined within the policy, and due to the vagueness of the Complaint filed by CHICKEN KITCHEN, it appeared that many of the allegations were for claims for damages that may not have been covered under the policy or may fall within certain exclusions in policy. [*Id.* at 9-10]. Mr. Moses also advised that neither Rudyard A. McDonnough nor the McDonnough's Investment Group met the definition of "insured" under the policy; therefore, MAIDEN would not provide a defense to the suit for those parties. [*Id.* at 10]. However, Mr. Moses advised that MAIDEN would continue to provide a defense to THREE CHEFFS, as well Rudyard McDonnough, Jr. and Richard McDonnough, as a director and officer of the corporation, respectively. [*Id.*].

14.     On May 4, 2012, Mr. Melendez sent a status update to Richard McDonnough

4

detailing Mr. Melendez's meeting with counsel for CHICKEN KITCHEN, and also informing him about upcoming deadlines and the ongoing discovery process. [*See* May 4, 2012 correspondence, attached as Exhibit "L", MAIDEN0348-0349].

15. On May 23, 2012, Donna Hart, a MAIDEN claims representative, indicated that CHICKEN KITCHEN had advised that they were in the process of compiling information related to a computation of damages for production. [*See* Claim Notes, attached as Exhibit "M", MAIDEN01335-01388; MAIDEN01356].

16. On June 27, 2012, Ms. Hart acknowledged correspondence received from Mr. Melendez regarding a computation of damages received from CHICKEN KITCHEN. [*See* Exhibit "M", MAIDEN01351-01352]. Specifically, Mr. Melendez noted that the documents suggested that CHICKEN KITCHEN had not suffered any lost sales, but that a separate entity or subsidiary not named as a party to the lawsuit had allegedly experienced a drop in sales. [*Id.*].

17. On July 25, 2012, MAIDEN initiated a declaratory judgment action against Three Chefs, the McDonnoughs, and CHICKEN KITCHEN in the United States District Court for the Southern District of Florida, seeking a declaration of the parties' rights and obligations under the Policy. [*See* Complaint for Declaratory Relief, attached as Exhibit "N"].

18. On August 1, 2012, Mr. Melendez sent a case evaluation to Ms. Hart containing an analysis of the damages computation CHICKEN KITCHEN had provided, which was attached as Exhibit "3" to the evaluation. [*See* August 1, 2012 letter, attached as Exhibit "O", at MAIDEN0990-1054; MAIDEN01026-1028]. According to the damages computation, CHICKEN KITCHEN was claiming lost profits of approximately $4,000.00 per week since the Three Chefs restaurant had opened, which CHICKEN KITCHEN claimed totaled $218,424.80, through June 17, 2012. [*Id.* at MAIDEN0993-0994; MAIDEN01026-1028]. CHICKEN KITCHEN also

claimed additional damages in the amount of $20,000.00 to retrain employees and an unspecified amount of damages for lost value of assets including reputation and goodwill. [*Id.*].

19.   Mr. Melendez identified several flaws in CHICKEN KITCHEN's damages calculation. [*Id.* at MAIDEN0993-0994; MAIDEN01026-1028]. First, Mr. Melendez noted that CHICKEN KITCHEN was not even the entity that was allegedly losing profits, but that it was a subsidiary of CHICKEN KITCHEN that was not a party to the matter that had allegedly sustained lost profits. [*Id.*]. Furthermore, CHICKEN KITCHEN had neglected to acknowledge a three-year trend in declining sales that predated the opening of the Three Chefs restaurant, and CHICKEN KITCHEN's damages calculations had failed to account for operating expenses such as overhead and advertising costs. [*Id.*]. Finally, CHICKEN KITCHEN's calculation of lost profits was based on their assessment of cost of goods sold being only 33% of sales; however, CHICKEN KITCHEN's computation ignored that their cost of goods sold had historically averaged approximately 66% of sales over the previous four (4) years based on the figures provided. [*Id.*]. Thus, even ignoring the prior three-year trend of declining sales, CHICKEN KITCHEN's historical average for cost of goods sold indicated that their lost profits were closer to approximately $2,000.00 per week rather than the $4,000.00 figure provided. [*Id.*]. Based on the figures provided by CHICKEN KITCHEN, to the extent that CHICKEN KITCHEN could actually prove liability and an entitlement to damages, Mr. Melendez assessed CHICKEN KITCHEN's alleged lost profits at just slightly over $100,000.00 as of June 17, 2012. [*Id.*].

20.   On August 21, 2012, the McDonnoughs and Three Chefs sent correspondence to Mr. Melendez advising that they had decided to retain different counsel in connection with this matter, and that Mr. Melendez should cease all work on the case and forward all files to Mr. Ross. [*See* August 21, 2012 letter, attached as Exhibit "P", MAIDEN0906].

21.     On August 29, 2012, Mr. Melendez sent correspondence to Mr. Ross enclosing Three Chef's and the McDonnoughs' case file per their request. [*See* August 29, 2012 letter, attached as Exhibit "Q". MAIDEN0114-0115].

22.     On August 30, 2012, Mr. Melendez and Sedgwick, LLP filed a Motion to Withdraw as counsel for Three Chefs, the McDonnoughs, and the McDonnough's Investment Group. [*See* Motion to Withdraw, attached as Exhibit "R", MAIDEN01055-01057].

23.     On September 20, 2012, Eric L. Berger, Esq. of Koppel & Associates, P.A., sent correspondence to Mr. Moses, advising that in light of the declaratory action filed by MAIDEN, the insureds had rejected the defense provided by MAIDEN, and thus, Mr. Berger explained that they believed MAIDEN had no right to participate in the mediation for the underlying litigation. [*See* September 20, 2012, attached as Exhibit "S", MAIDEN01544].

24.     An October 5, 2012 claim note by MAIDEN claim representative Vicky Cowley reflects a summary of the events that transpired during and immediately following the October 3, 2012 mediation. [*See* Exhibit "M", MAIDEN01336-01339]. Although the insureds attorney precluded Ms. Cowley and Mr. Moses from participating in the mediation on behalf of MAIDEN, Mr. Moses and Ms. Cowley spoke with CHICKEN KITCHEN's counsel and representative following the mediation. [*Id.*]. CHICKEN KITCHEN's counsel indicated that Three Chefs wanted to enter into a consent judgment or a *Coblentz* agreement in order to wash their hands of the matter and put the responsibility on MAIDEN. [*Id.*]. CHICKEN KITCHEN's representative also discussed his perception of damages. [*Id.*]. While CHICKEN KITCHEN had previously provided a damages sheet indicating a damages evaluation of approximately $234,303.28 as of June 12, 2012, CHICKEN KITCHEN now claimed $30,000.00 for the cost to train new staff and $750,000.00 in lost assets, for which no supporting documentation was provided. [*Id.*]. CHICKEN

7

KITCHEN's representative also indicated that they would have accepted $800,000.00 to settle at mediation if Three Chefs agreed to change their company footprint. [*Id.*]. In response, MAIDEN indicated that they would offer $50,000.00 based on the information provided. [*Id.*].

25. On or around October 25, 2015, without MAIDEN's knowledge or consent, THREE CHEFS executed an "Assignment, Settlement Agreement, and Covenant Not to Execute or Record" (the "*Coblentz* Agreement") with CHICKEN KITCHEN in the amount of $1,200,000.00 as to Count V of the underlying action for Trade Dress Infringement. [*See Coblentz* Agreement, attached as Exhibit "T", MAIDEN01553-01570]. Three Chefs and CHICKEN KITCHEN agreed that the remaining counts of the underlying action would be dismissed with prejudice, and Three Chefs agreed to assign its right, title, and interest in the MAIDEN commercial general liability policy to CHICKEN KITCHEN. [*Id.* at MAIDEN01553-01554]. Subsequently, on November 7, 2012, CHICKEN KITCHEN, Three Chefs, the McDonnoughs, and counter-defendant Christian Mahe De Berdouare filed a joint motion for approval of the *Coblentz* Agreement. [*See* Joint Motion, attached as Exhibit "U", MAIDEN01545-01549]. On November 7, 2012, the Court entered an Order approving the parties' Joint Motion, thereby entering a consent Final Judgment in the sum of $1,200,000.00. [*See* Order, attached as Exhibit "V"].

26. On November 9, 2012, Mr. Berger sent correspondence to Mr. Moses advising that Three Chefs had entered into a settlement agreement with CHICKEN KITCHEN for the sum of $1,200,000.00. [*See* November 9, 2012 letter, attached as Exhibit "W", MAIDEN01571-01572].

27. On January 2, 2013, Teresa Fitzgerald, a MAIDEN claims analyst, sent correspondence to Mr. Berger advising that by entering into the *Coblentz* Agreement with CHICKEN KITCHEN without the consent of MAIDEN, Three Chefs had breached the terms of the policy. [*See* January 2, 2013 letter, attached as Exhibit "X"]. Therefore, Ms. Fitzgerald advised

8

Mr. Berger that MAIDEN was reserving its right to deny coverage to Three Chefs and the McDonnoughs as a result of their breach of the policy. [*Id.*].

28. On March 13, 2014, a Declaratory Judgment was entered in favor of Three Chefs and the McDonnoughs, by the Court finding that the allegations in CHICKEN KITCHEN's Complaint were covered under the MAIDEN insurance policy as "personal and advertising injuries." [*See* Declaratory Judgment, attached as Exhibit "Y"].

29. Thereafter, on September 5, 2014, the instant bad faith action ensued. [DE 1].

30. On October 30, 2015, a hearing was held before the Magistrate Judge Goodman concerning MAIDEN's Subpoenas for Deposition Duces Tecum served on Mr. Ross and Mr. Berger, whereby MAIDEN sought information related to the formation of the *Coblentz* Agreement. [*See* Hearing transcript, attached as Exhibit "Z"]. In objecting to the requested depositions, Mr. Ross openly asserted during the hearing that he had no knowledge or basis to support the amount of *Coblentz* Agreement, and that the formation of the *Coblentz* Agreement was not the product of negotiations, but that CHICKEN KITCHEN "gave us a number, and we said 'yes.'" [*Id.* at 12-13]. Thus, Judge Goodman compelled Mr. Ross, Mr. Berger, and the McDonnoughs to submit affidavits confirming Mr. Ross's open court assertions concerning the lack of research, support, or negotiations involved in the formation of the *Coblentz* Agreement. [*Id.* at 15; 17].

31. On November 3, 2015, Richard Ross, Esq. submitted an affidavit pursuant to the Court's November 2, 2015 Order. [DE 86]. In his affidavit, Mr. Ross affirmed his representations made in court on October 30, 2015, concerning the *Coblentz* Agreement that is the subject of this action. [*Id.*]. Specifically, Mr. Ross affirmed that the settlement amount contained in the *Coblentz* Agreement was not the subject of give and take negotiations, but, rather, was simply a figure

9

provided by CHICKEN KITCHEN and accepted by Three Chefs. [*Id.*]. Furthermore, Mr. Ross stated that at no time did he undertake any evaluation of the reasonableness of the amount of the settlement agreement in any manner whatsoever, and he that he had no factual basis on which to form an opinion whether the settlement amount was reasonable. [*Id.*].

      32.    On November 4, 2015, Eric L. Berger, Esq. likewise submitted an affidavit pursuant to the Court's November 2, 2015 Order, affirming that he had no involvement in any negotiation as to the amount of the *Coblentz* Agreement, and that the settlement was the result of CHICKEN KITCHEN providing a figure through its counsel, which was subsequently accepted by his clients, Three Chefs. [DE 87]. Mr. Berger further swore that he did not undertake any evaluation of the reasonableness of the settlement amount in any manner whatsoever, and that he had no factual basis to form an opinion on whether the settlement amount was reasonable. [*Id.*].

      33.    Around November 5, 2015, Richard McDonnough and Rudyard McDonnough, Jr. also submitted affidavits pursuant to the Court's November 2, 2015 Order, affirming that the settlement amount contained in the *Coblentz* Agreement was not the subject of give and take negotiations, but rather, CHICKEN KITCHEN provided a figure through its counsel to Mr. Ross, and the McDonnoughs simply accepted it. [DE 89; DE 91]. Richard McDonnough and Rudyard McDonnough, Jr. both also stated that at no time did either undertake any evaluation of the reasonableness of the settlement amount in any manner whatsoever. [*Id.*].

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of April, 2016, I served the foregoing document on all counsel of record or pro se parties identified on the attached Service List in the manner specified.

          **s/ MICHEL A. MORGAN**
**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**ADAM A. DUKE**
Florida Bar No.: 0055734
aduke@flalawyer.net
**MICHEL A. MORGAN**
Florida Bar No.: 0102764
mmorgan@flalawyer.net
**RICHARD A. WELDY**
Florida Bar No.: 111811
Rweldy@flalawyer.net
Young, Bill, Boles, Palmer & Duke, P.A.
One Biscayne Tower, Suite 3195
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 222-7720
Facsimile: (305) 492-7729
Attorneys for MAIDEN SPECIALTY
INSURANCE COMPANY

**SERVICE LIST**
**CHICKEN KITCHEN USA, LLC v. MAIDEN SPECIALTY INSURANCE COMPANY**
**CASE NUMBER 1:14-cv-23282-JLK**
**U.S. SOUTHERN DISTRICT OF FLORIDA**

**ROBERT ZARCO**
rzarco@zarcolaw.com
**ALEJANDRO BRITO**
abrito@zarcolaw.com
Zarco Einhorn Salkowski & Brito, P.A.
Miami Tower
100 S.E. 2nd Street, Suite 2700
Miami, Florida 33131
Telephone: (305) 374-5418 / Facsimile: (305) 374-5428
Counsel for Plaintiff CHICKEN KITCHEN USA, LLC
*Via CM/ECF Notice of Electronic Filing and/or electronic mail*