UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-23282-CIV-GOODMAN

[CONSENT CASE]

CHICKEN KITCHEN USA, LLC, as assignee of
THREE CHEFS AND A CHICKEN, INC.

    Plaintiff,

v.

MAIDEN SPECIALTY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION

In the instant bad faith insurance case, Defendant, Maiden Specialty Insurance Company ("Maiden"), seeks summary judgment against Plaintiff, Chicken Kitchen USA, LLC ("Chicken Kitchen"),[1] as to the unenforceability of Chicken Kitchen and

---

[1] In the underlying action, *Chicken Kitchen USA, LLC v. Three Chefs and a Chicken, et al.*, United States District Court for the Southern District of Florida, Case No. 12-20891-CIV-HUCK/BANDSTRA, Chicken Kitchen sued its former franchisee, Three Chefs and a Chicken ("Three Chefs"), for the following counts: Breach of Contract; Injunctive Relief; Misappropriation of Trade Secret; Injury to Business Reputation and Dilution; Trade Dress Infringement; Unfair Competition under the Lanham Act; Unfair Competition under Florida Common Law; and Violation of the Florida Deceptive and Unfair Trade Practices Act ("Underlying Action"). [ECF No. 131, ¶ 17].

Three Chefs'[2] *Coblentz* Agreement.[3] In its motion [ECF No. 130, pp. 17-20]**,** Maiden also asks this Court to find in the alternative that no reasonable jury could conclude that Maiden acted in bad faith under the totality of the circumstances. The Undersigned has reviewed Maiden's motion [ECF No. 130] and statement of material facts in support of its motion [ECF No. 131], Chicken Kitchen's response [ECF No. 139], and Maiden's reply [ECF No. 143]. The Undersigned **denies** Maiden's motion.

## I.   Chicken Kitchen's Procedural Defects

Chicken Kitchen did not file a statement of disputed facts in response to Maiden's statement of undisputed material facts in support of its summary judgment motion. [ECF No. 131]. Chicken Kitchen did, however, submit rebutting evidence in its response, including the affidavit of its principal Christian Mahe De Berdouare; records

---

[2]   Three Chefs is the named insured under a commercial general liability policy with Maiden that covers "advertising injury" (the "Policy"). [ECF No. 131, Exhibit "A"]. The Policy's limit per occurrence is $1 million and the aggregate is $2 million. [ECF No. 1, Exhibit "B"].

[3]   In the Underlying Action, Three Chefs and Chicken Kitchen reached a $1.2 million settlement. Under the settlement, Chicken Kitchen could not collect from Three Chefs, and Three Chefs assigned Chicken Kitchen the insurance policy rights to pursue that judgment directly from Maiden. [ECF No. 139, pp. 1-2]. This settlement that Maiden seeks to invalidate is the *Coblentz* Agreement, which is an agreement where "an insurer will be bound to a settlement agreement/consent judgment negotiated between an insured and claimant" under certain conditions. *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008); *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059, 1063 (5th Cir. 1969) (holding that such agreements are valid under Florida law).

of Chicken Kitchen's damages in the Underlying Action; and Mr. Mahe De Berdouare's deposition. [ECF Nos. 139-1; 139-2; 139-3].

Nevertheless, despite Chicken Kitchen's submission of evidence which turned out to rebut some of Maiden's undisputed facts, the Undersigned *could*, under Local Rule 56.1, deem as admitted all the facts submitted by Maiden in support of its arguments.

As the plain language of Local Rule 56.1 states, "(a): A motion for summary judgment **and the opposition thereto** shall be accompanied by a **statement** of material facts as to which it is contended . . . there does exist a genuine issue to be tried[.]" S.D. Fla. L.R. 56.1(a) (emphasis supplied). The Local Rule requires that such statement "(1) Not exceed ten (10) pages in length; (2) Be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and (3) Consist of **separately numbered paragraphs**." *Id.* (emphasis supplied).

Specifically, for statements of material facts submitted in *opposition* to a motion for summary judgment, the Local Rule requires "correspond[ence] with the order and **with the paragraph numbering scheme** used by the movant" and requires that "[a]dditional facts which the party opposing summary judgment contends are material shall be **numbered** and placed at the **end of the opposing party's statement** of material facts [.]" *Id.* (emphasis supplied). Failure of a respondent to file a statement of disputed facts, in the format as required above, causes "[a]ll material facts set forth in the

3

movant's statement" to be "deemed admitted unless controverted by the opposing party's **statement**[.]" S.D. Fla. L.R. 56.1(b) (emphasis added).

When a party properly compiles with Local Rule 56.1, it is relatively easy for a court to determine whether there is a genuine disputed issue of fact. Basically, all a court needs to do is to look at the opposing statement of material facts on a paragraph-by-paragraph basis and quickly see whether any paragraphs are designated as disputed. When a party does not comply with the Local Rule, however, then it is exceedingly difficult for a court to discern if there is a factual dispute. A court needs to review the entire opposing memorandum and determine whether any particular sentence or paragraph is, in fact, a rebuttal piece of evidence which might generate a disputed issue of material fact. This can be an arduous process, and, in any event, generates unnecessary work for the court and its staff.

Chicken Kitchen did not follow any of the procedural requirements of Local Rule 56.1. Its lack of compliance is so clear-cut that the Court undoubtedly has the discretion to deem Maiden's facts admitted and then enter summary judgment in Maiden's favor as Chicken Kitchen's defective response essentially leaves the Court with "the functional analog of an unopposed motion for summary judgment." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015) (admitting facts from defendant's undisputed material facts statement after reviewing the record based on plaintiff's violation of Local Rule 56.1); *Regions Bank v. 62' Ocean Sport Fish*, No. 13–20966–CIV,

4

2014 WL 4055707, at *2 (S.D. Fla. Aug. 14, 2014) (admitting undisputed facts in plaintiff's statement supported by the record based on defendants' violation of Local Rule 56.1).[4]

However, in recognition that the opposition contains a significant amount of evidence which can be viewed as rebutting the facts asserted in the motion's material facts statement, this Court will take a more conservative approach and will consider Chicken Kitchen's rebutting (albeit procedurally improper) evidence.

The absence of a statement of disputed facts is not the only procedural defect in Chicken Kitchen's opposition. Chicken Kitchen's response to Maiden's summary judgment motion neglects to state anywhere that the enforceability of the *Coblentz* Agreement is materially disputed. Rather, Chicken Kitchen seeks from this Court a "de facto" cross motion for summary judgment and an affirmative ruling that the *Coblentz* Agreement was in fact indisputably executed in good faith. By arguing that the *Coblentz* Agreement should be deemed valid now by the Court, Chicken Kitchen is asking for a ruling which must depend on the absence of material factual disputes.

---

[4] On the other hand, Maiden did not file a motion to strike Chicken Kitchen's opposition response for violating the Local Rule, nor did it interpose any objection to the response's procedural failings. In fact, its reply never even *mentioned* that the opposition response blatantly failed to follow the straightforward procedural directives established by the Local Rule. *See* [ECF No. 131].

Although never explicitly stated in Chicken Kitchen's opposition (and although Chicken Kitchen essentially argues that a summary judgment *would* be appropriate, albeit in *its* favor), this argument implicitly raises actual material disputes of fact as to the enforceability of the *Coblentz* Agreement and whether Maiden acted in bad faith in the Underlying Action. Despite Chicken Kitchen's unacceptable briefing in opposition to Maiden's motion and despite its implicit argument that there are *no* material disputes of fact, the Undersigned disagrees and therefore will not prevent a jury from weighing the disputed evidence and evaluating the credibility of both side's witnesses.

## II. <u>Factual and Procedural History</u>

The Underlying Action arose from the restaurant chain Chicken Kitchen's dispute with its former franchisee, Three Chefs. [ECF No. 139, p. 2]. On August 27, 1999, Chicken Kitchen entered into a Franchisee Agreement with The McDonnough's Investment Group, Inc. ("McDonnough Investment Group"), whose principals are Rudyard A. McDonnough, Rudyard McDonnough, Jr., and Richard McDonnough (collectively "the McDonnoughs") and opened up a Chicken Kitchen franchise restaurant on 11423 Southwest 40th Street, Miami, Florida 33165 ("WestBird Store"). [ECF Nos. 1, ¶¶ 10-12; 131, Exhibit "B"]. Chicken Kitchen and the McDonnoughs operated under the Franchise Agreement until its termination in November 2007. [ECF Nos. 1, ¶ 13; 139, p. 2).

In June of 2011, Chicken Kitchen alleged in the Underlying Complaint that Three Chefs opened a competing restaurant called "3 Chefs and a Chicken" on the same street as the WestBird Store and that it was a replica of the Chicken Kitchen restaurant. [ECF Nos. 1, ¶ 14; 139, p. 3). Chicken Kitchen claimed that the McDonnoughs were essentially operating a Chicken Kitchen restaurant under a different name and without Chicken Kitchen's permission to avoid compensating Chicken Kitchen under the Franchise Agreement. [ECF No. 1, ¶ 15].

In February 22, 2012, Three Chefs and Richard McDonnough notified Maiden of the Underlying Action and sought Maiden's defense under the Policy's "personal and advertising injury" coverage. [ECF Nos. 1, ¶¶ 18-22; 131-3; 131-41].

Three Chefs and the McDonnoughs asked Maiden to retain Richard Ross, Esq. as counsel [ECF Nos. 1, ¶ 23; 131-3]. Maiden did not approve of Three Chefs' choice of counsel and Maiden also contested that the Policy covered Three Chefs for all of Chicken Kitchen's alleged injuries. [ECF Nos. 131-11; 131-16; 131-18; 139, p. 4]. Maiden instead hired Moises Melendez, Esq. to defend Three Chefs under a reservation of rights concerning coverage and indemnification and Maiden denied a defense to the McDonnoughs on the ground that they were not named as insureds under the Policy. [ECF No. 131-11].

On July 25, 2012, Maiden initiated a declaratory judgment action against Three Chefs, the McDonnoughs, and Chicken Kitchen in the United States District Court for

7

the Southern District of Florida, seeking a declaration of the parties' rights and obligations under the Policy. [ECF No. 131-14]. On August 21, 2012, the McDonnoughs and Three Chefs sent correspondence to Mr. Melendez advising that they had decided to retain different counsel in light of the declaratory judgment action. [ECF Nos. 131-11; 131-14].

On September 20, 2012, Eric L. Berger, Esq., counsel for Three Chefs and the McDonnoughs in the declaratory action, sent correspondence to Mr. Moses, Esq., Maiden's attorney, advising him that in light of the declaratory action, the insureds had rejected Maiden's defense and Maiden was barred from the Underlying Action's mediation. [ECF No. 131-19]. In the aftermath of the mediation, Maiden's claims adjuster, Vicky Cowley, alleges that she spoke with Chicken Kitchen's counsel, and Maiden offered $50,000 to settle the Underlying Action. [ECF No. 131-13].

On October 25, 2012, Three Chefs executed the *Coblentz* Agreement with Chicken Kitchen in the amount of $1,200,000.00 and Three Chefs agreed to assign its right, title, and interest in the Policy to Chicken Kitchen. [ECF No. 131-20]. On November 7, 2012, the Court entered an Order approving the parties' Joint Motion, thereby entering a consent Final Judgment in the sum of $1,200,000.00. [ECF Nos. 131-21; 131-22].

On March 13, 2014, a Declaratory Judgment was entered in favor of Three Chefs and the McDonnoughs by United States District Judge Joan A. Lenard, who ruled that

8

allegations in Chicken Kitchen's Complaint *were* covered under the Policy as "personal and advertising injuries." [ECF Nos. 131-25; 139, p. 4].

On September 5, 2014, Chicken Kitchen filed the instant action against Maiden to enforce payment under the *Coblentz* Agreement. [ECF No. 1].

### III.   Legal Standard

Summary judgment is appropriate only when the Court is satisfied "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under the governing law. *See id.* As the movant, Maiden bears the initial burden of showing, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* As succinctly explained by the Eleventh Circuit Court of Appeals, "by definition, a summary judgment ruling involves no findings of fact." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013).

### IV.   Legal Analysis

This case involves a *Coblentz* Agreement, or "a negotiated final consent judgment entered against an insured" that was not defended by his insurer. *Wrangen,* 593 F. Supp. 2d at 1278. Generally, under a *Coblentz* Agreement, an insured defendant enters into a settlement that assigns to the plaintiff the insured's rights against the insurer in

9

exchange for a release from personal liability. *Mobley v. Capitol Specialty Ins.*, No. 13-20636-CIV, 2013 WL 3794058, at *2 (S.D. Fla. July 19, 2013) (applying Florida law).

To bind Maiden to the *Coblentz* Agreement, Chicken Kitchen must initially prove that (1) damages are covered by the Policy;[5] (2) Maiden wrongfully refused to defend; and (3) the settlement is reasonable and made in good faith. *Wrangen*, 593 F. Supp. 2d at 1278; *Chomat v. N. Ins. Co. of N.Y.*, 919 So. 2d 535, 538 (Fla. 3d DCA 2006). Maiden retains "the ultimate burden of proof" at trial. *Chomat*, 919 So. 2d at 538.

Under Florida law, a *Coblentz* agreement is unenforceable against the insurance carrier if the settlement is "not reasonable in amount" or "is tainted by bad faith, fraud, collusion or is entered into without efforts to minimize liability." *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 534 F. App'x. 926, 928 (11th Cir. 2013). Chicken Kitchen has not properly moved for affirmative relief (i.e., it did not seek an actual summary judgment), thus the Court will address only Maiden's arguments: (a) that Maiden did not refuse to defend Three Chefs; (b) that the *Coblentz* Agreement was tainted by bad faith, fraud, collusion or was entered into without efforts to minimize liability; (c) that the settlement amount is unreasonable; and (d) that no reasonable jury could conclude that Maiden handled Three Chefs' claim in bad faith.

---

[5] Three Chefs' coverage under the Policy and the Policy's applicability to the Underlying Action is undisputed. [ECF Nos. 131-25; 139, p. 4].

a. *Whether Maiden Refused to Defend Three Chefs*

An insurance provider's duty to defend an insured party "depends *solely* on the facts and legal theories alleged in the pleadings and claims against the insured." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (internal citations omitted); *Anapolsky v. Nat'l Union Fire Ins. Co.*, No. 12-21275-Civ, 2013 WL 11842018, at *5 (S.D. Fla. Aug. 21, 2013) ("If the complaint sets forth facts which bring the claim within policy coverage, the duty to defend arises.") (internal citations omitted).

Maiden did hire Mr. Melendez to represent Three Chefs in the Underlying Action and there is no evidence presented by Chicken Kitchen that disputes the quality of such representation. In fact, Maiden's adjuster spoke with Chicken Kitchen's counsel in attempt to settle the case for $50,000, even though Three Chefs barred Maiden from participating in the mediation. [ECF Nos. 131-13; 131-19].

However, there is undisputed evidence that Maiden prevented Three Chefs to proceed with a lawyer of its choice [ECF Nos. 1, ¶¶ 23-27; 131-3] and that Maiden issued a reservation of its rights and actively fought against the Policy's coverage of Three Chefs in the Underlying Action. [ECF Nos. 131-11; 139, p. 4]. Maiden refused to represent all the defendants in the Underlying Action and filed an unsuccessful declaratory judgment action in attempt to avoid coverage. [ECF Nos. 131-11; 131-14; 139, p. 4]. These facts could support a conclusion that Maiden did not fulfill its duty. As

11

a result, whether Maiden fulfilled its duty to defend Three Chefs in the Underlying Action is disputed.

> b. *Whether the Settlement Was Tainted by Bad Faith, Fraud, Collusion or Was Entered into without Efforts to Minimize Liability*

Maiden relies on *Culbreath v. Travelers Casualty and Surety Company of America.*, No. 8:12–cv–2928–T–26EAJ, 2015 WL 9434387, at *5 (M.D. Fla. Oct. 22, 2015), for the proposition that the *Coblentz* Agreement was executed in bad faith because Three Chefs decided to "lie down" and accept an inflated judgment without negotiation as long as the judgment would come from the insurer. [ECF No. 130, pp. 6, 12]. Maiden offers undisputed evidence as to this point through the affidavits of Three Chefs representatives, Richard McDonnough and Rudyard A. McDonnough, and Three Chefs' attorneys in the Underlying Action, Richard Ross, Esq. and Eric Berger, Esq. [ECF Nos. 86; 87; 89; 91]. In each affidavit, the affiants consistently swear to the fact that Chicken Kitchen presented one settlement figure to Three Chefs and that it was "simply accepted" without "give and take negotiations" or an "evaluation of the reasonableness of the settlement amount" by Three Chefs' attorneys. [ECF Nos. 86; 87; 89; 91].

In "determining whether a settlement is reasonable, a Florida court considers not only such objective factors as the extent of plaintiff's injuries, but also certain subjective factors . . . including the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial and the chances that the jury verdict might exceed the settlement offer." *Wrangen*, 593 F. Supp. 2d at 1279 (internal quotations and citations omitted).

12

Chicken Kitchen alleges that Three Chefs could not afford the costs of the litigation, let alone a judgment in any amount if Chicken Kitchen prevailed and Maiden refused coverage. [ECF No. 139, p. 14]. Thus, a jury needs to weigh the evidence and determine whether Three Chefs' acceptance of a $1.2 million settlement without negotiation or investigation by counsel was in fact in bad faith or whether it was Three Chefs' only viable option.

        c.    *Whether the Settlement Amount Was Unreasonable*

Maiden also argues that the amount of the settlement was completely unreasonable. Maiden claims that this Court cannot consider Mr. Mahe de Berdouare's statements in his affidavit, deposition, and damage calculations as to the reasonableness of the settlement amount because such filings are self-serving. Maiden cites to *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) for the proposition that self-serving statements made by an interested party do not constitute sufficient evidence to survive a summary judgment motion. [ECF No. 143, p. 7].

This Court disagrees. The Eleventh Circuit Court of Appeals has more recently ruled that as a "general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013); *Reid v. Sec., Fla. Dept.*

*of Corr.*, 486 F. App'x 848, 852 (11th Cir. 2012) ("[F]or purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case."); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").

Mr. Mahe de Berdouare's statements in support of Chicken Kitchen's response are, of course, self-serving. Parties do not typically submit affidavits in support of, or to contest, summary judgment motions unless the affidavits are *helpful.* In fact, it would be difficult to imagine a scenario where a party submitted an affidavit which was not helpful to its side -- in other words, self-serving. Mr. Mahe de Berdouare states in his affidavit that the Underlying Action's damages amounted to more than $2 million, that Three Chefs was operating a replica of Chicken Kitchen without having to compensate Chicken Kitchen under the Franchise Agreement, that Three Chefs used identical recipes and products to the formerly operated WestBird Store, and that Three Chefs hired at least six of Chicken Kitchen's employees to run its stores. [ECF No. 139-2].

The damage calculations included in Chicken Kitchen's response [ECF No. 139-2] corroborate Mr. Mahe de Berdouare's statements in his affidavit and deposition [ECF Nos. 139-1; 139-3]. His affidavit and calculations list the following damages: (a) loss of profits at the WestBird Store estimated to be more than $200,000; (b) unaccounted for

14

lost profits at other Chicken Kitchen locations; (c) unaccounted for costs of hiring and training new employees; (d) diminution of value of the WestBird store; and (e) loss of value of the Chicken Kitchen brand.

These statements alone do not explain how Mr. Mahe de Berdouare came to believe that $2 million dollars were owed. Maiden certainly has a right to discredit such numbers through its own investigation. However, the existence of such statements and testimony alone is enough to deny Maiden's motion. Maiden may challenge those statements at trial, through cross-examination and the submission of other evidence, including perhaps expert witness opinion testimony. For now, however, the Undersigned cannot simply choose to flat-out discredit all of those permissable lay opinions and enter summary judgment for Maiden.

    e.    *Whether Under the Totality of the Circumstances No Jury Could Find that Maiden Handled Three Chefs' Claim in Bad Faith*

Under Florida law, insurers owe a duty to their insureds to act in good faith. *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995). To satisfy the duty of good faith, "an insurer does not have to act perfectly, prudently, or even reasonably." *Novoa v. GEICO*, 542 F. App'x 794, 796 (11th Cir. 2013). *Rather*, insurers must "refrain from acting solely on the basis on their own interests in settlement." *Laforet*, 658 So. 2d at 58.

Maiden argues that it should prevail on summary judgment because disputing whether the Policy covered Three Chefs in the Underlying Action and filing a

declaratory action regarding the same, standing alone, does not constitute bad faith. As previously discussed above, there are material disputes of fact as to whether Maiden fulfilled its duty to defend, whether the settlement was made in good faith, and whether the amount of such settlement is reasonable.

Summary judgment may not be granted where the record reflects conflicting versions of material facts which require credibility determinations. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999); *Van Poyck v. Dugger*, 779 F. Supp. 571, 572 (M.D. Fla. 1991). *See also Slusser v. Orange Cty. Pub. Schs.*, 936 F. Supp. 895, 898 (M.D. Fla. 1996) (noting that in summary judgment proceedings, the court may not weigh the credibility of the parties, and if the determination of the case rests on which competing version of the facts or events is true, then the case should be presented to the trier of fact).

Here, the credibility of the parties, and their competing versions of the facts as to the enforceability of the *Coblentz* Agreement and whether Maiden acted in bad faith must reach a jury. Through Mr. Mahe de Berdouare's affidavit, deposition, and damage calculations, Chicken Kitchen demonstrated (albeit in a procedurally improper way) the existence of factual issues which require this action to proceed to trial.

## V. Conclusion

The Undersigned **denies** Maiden's summary judgment motion.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on August 31, 2016.

**Copies furnished to**:
All Counsel of Record

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE